IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEAPFROG ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-927-GMS |
| | ) | |
| | ) | |
| FISHER-PRICE, INC. and | ) | |
| MATTEL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

**I.   INTRODUCTION**

In the above-captioned action, Leapfrog Enterprises, Inc. ("Leapfrog") alleges that Fisher-Price, Inc.'s ("Fisher-Price") PowerTouch product infringes claim 25 of U.S. Patent No. 5,813,861 (filed June 20, 1997) ("the '861 patent"), which describes an interactive learning device. The case went to trial on May 16, 2005, but the jury became deadlocked and a mistrial was declared. The parties agreed to submit the disputed factual matters to the court for resolution. For the following reasons, the court finds that the PowerTouch does not infringe claim 25 of the '861 patent, and that claim 25 of the '861 patent is invalid as obvious in light of the prior art.

**II.   BACKGROUND**

The '861 patent specifically "relates to an interactive learning device having one or more preferably touch sensitive three dimensional indicia bearing units, each representing a letter or number which, upon touching, activates voice synthesis circuitry to audibly produce the name and/or phonetic sounds associated with the indicia bearing unit." '861 Patent col.1 ll.37-42. In this way, it allows a child to "establish a relationship between the symbols of letters or numbers represented by the indicia bearing unit to the sounds and names associated with those symbols." *Id.* col.1 ll.41-

44. Thus, claim 25 reads as follows:

> 25. An interactive learning device, comprising:
>
> a housing including a plurality of switches;
>
> a sound production device in communication with the switches and including a processor and a memory;
>
> at least one depiction of a sequence of letters, each letter being associable with a switch; and
>
> a reader configured to communicate the identity of the depiction to the processor,
>
> wherein selection of a depicted letter activates an associated switch to communicate with the processor, causing the sound production device to generate a signal corresponding to a sound associated with the selected letter, the sound being determined by a position of the letter in the sequence of letters.

*Id.* col.10 ll.23-36. Among the terms previously construed by the court are "selection of a depicted letter," which the court construed as "choosing a particular depicted letter from the depicted sequence of letters by contacting or coming into proximity to that particular depicted letter," and "sound associated with the selected letter," which the court construed as "phoneme associated with the selected letter." (D.I. 224 ¶¶ 10-11.) The entire "wherein" limitation was construed as having its plain and ordinary meaning, but only to the extent that the plain and ordinary meaning is consistent with the court's construction of "selection of a depicted letter" and "sound associated with the selected letter." (Id. ¶¶ 12-13.)

The accused device, Fisher-Price's PowerTouch (EX 25), is also an interactive learning device. It consists of a hinged plastic housing that opens much like a briefcase. When the housing is open and laying flat, it exposes a large, rectangular recess that spans across the hinge from one edge of the housing to the other. The rectangular recess is configured to accept one of many books sold with the device or sold separately. The book used as an exemplar at trial is entitled *Ernie's*

*Neighborhood*. (PX 475.)  By placing that book in the recess and opening it to pages 3 and 4, for example, a user sees a picture of Sesame Street with depictions of many standard Sesame Street characters engaged in various activities with descriptive labels in close proximity to each character. One such depiction is Cookie Monster peeking out of a bakery doorway, wearing an apron, a chef's hat, and an oven mitt, and not surprisingly, holding a tray of cookies.  Immediately above Cookie Monster's hat is a label containing the word "baker."  The drawing of the bakery also contains a depiction of a vertical sign on which the word "BAKER" is written in letters appreciably larger than the letters in the relatively small "baker" label above Cookie Monster's hat.

With the PowerTouch configured as described above, the user can chose one of many modes of operation, including a so-called "phonics" mode.  In that mode, the PowerTouch verbally encourages the user to touch one of the many words depicted on the page, including both the words in labels (such as "baker") and the words on signs (such as "BAKER").  When the user complies and touches a word, the PowerTouch pronounces the entire word, then sounds out each phonetic unit (or phoneme) of the word, and finally, pronounces the entire word again.  So, for example, when the user touches the "baker" label, the PowerTouch pronounces "baker" in its entirety, then says "buh-aye-kuh-er," and finally, pronounces "baker" in its entirety again.  The PowerTouch responds in exactly the same way when the user touches the "BAKER" sign.  Importantly, the particular location within either word ("baker" or "BAKER") that the user decides to touch is also irrelevant to the PowerTouch's response.  In other words, the PowerTouch responds in exactly the same way, regardless of what letter is touched in either word, *e.g.*, the "a" or the "r" in "baker," or the "B" or the "E" in "BAKER."  With this background in mind, the court will now proceed in its mutually agreed-upon role as factfinder.

## III. DISCUSSION

### A. Literal Infringement

It is doubtlessly true that the PowerTouch is within the same basic genre of children's learning toys as the device described in claim 25. Nevertheless, "literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1377 (Fed. Cir. 2004). (See also D.I. 298 at 21.) One of the limitations set forth by claim 25 is that a user must be able to "choos[e] a particular depicted letter from the depicted sequence of letters by contacting or coming into proximity to that particular depicted letter." (D.I. 224 ¶ 10.) It is abundantly clear from the court's operation and observation of the accused device that the PowerTouch does not permit the user to make such a choice. Although the user can certainly *try* to select the letter "B" in "BAKER," the user's intentions cannot alter the nature of the accused device, that is, to allow the selection of full words only. Had Leapfrog claimed the selection of depicted words instead of letters, the court might have proceeded to find infringement. However, the selection of words was not claimed, and therefore, the court need not consider any other limitations to find by a preponderance of the evidence that the PowerTouch device does not infringe claim 25 of the '861 patent.[1]

---

[1] At trial, pursuant to Fisher-Price's motion, the court ruled from the bench that Leapfrog failed to prove infringement under the doctrine of equivalents. (Tr. at 1065:14-15.)

**B.     Obviousness**

The standard for determining whether a patent is invalid as obvious has been succinctly laid out by the Federal Circuit:

Section 103 of title 35 of the United States Code states:

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a)(2000).

> In making the assessment of differences, section 103 specifically requires consideration of the claimed invention "as a whole." Inventions typically are new combinations of existing principles or features. *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 698 (Fed. Cir. 1983) (noting that "virtually all [inventions] are combinations of old elements."). The "as a whole" instruction in title 35 prevents evaluation of the invention part by part. Without this important requirement, an obviousness assessment might break an invention into its component parts (A + B + C), then find a prior art reference containing A, another containing B, and another containing C, and on that basis alone declare the invention obvious. This form of hindsight reasoning, using the invention as a roadmap to find its prior art components, would discount the value of combining various existing features or principles in a new way to achieve a new result – often the very definition of invention.
>
> Section 103 precludes this hindsight discounting of the value of new combinations by requiring assessment of the invention as a whole. This court has provided further assurance of an "as a whole" assessment of the invention under § 103 by requiring a showing that an artisan of ordinary skill in the art at the time of invention, confronted by the same problems as the inventor and with no knowledge of the claimed invention, would select the various elements from the prior art and combine them in the claimed manner. In other words, the examiner or court must show some suggestion or motivation, before the invention itself, to make the new combination. *See In re Rouffet*, 149 F.3d 1350, 1355- 56 (Fed. Cir. 1998).
> . . .
> While this court indeed warns against employing hindsight, its counsel is just that – a warning. That warning does not provide a rule of law that an express, written motivation to combine must appear in prior art references before a finding of obviousness. Stated differently, this court has consistently stated that a court or

> examiner may find a motivation to combine prior art references in the nature of the problem to be solved. . . . This form of motivation to combine evidence is particularly relevant with simpler mechanical technologies.

*Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275-76 (Fed. Cir. 2004). (See also D.I. 298 at 31-37.)

The first piece of prior art pointed to by Fisher-Price, which was not considered by the examiner during prosecution, is U.S. Patent No. 3,748,748 (filed Dec. 30, 1971) ("the '748 patent" or "the Bevan patent"). The Bevan patent is generally geared toward "providing a voice responsive puzzle game in which various words, sounds or phrases of a nursery rhyme, writing or saying may be randomly selected, actuated and enunciated," '748 Patent col.1 ll.30-33, with the goal of "teaching reading using the phonics technique," *id.* col.2 ll.22-23. More specifically, the Bevan patent describes a covered housing containing a "voice storage means." *Id.* col.2 l.47, col.4 ll.25-29. The patent also provides a plurality of "oddly shaped puzzle piece[s] which [are] insertable [into] respective matching oddly shaped opening[s]" in the housing cover. *Id.* col.4 ll.47-53. In one embodiment, three such puzzle pieces having depictions of the letters "C," "A," and "T" fit into the oddly-shaped openings to spell the word "CAT." *Id.* col.13 ll.33-38. "When any one of the three puzzle pieces which form the word C-A-T is placed in its respective oddly shaped opening and is depressed the voice storage means is activated . . . and the phonetic enunciation of the letter imprinted on the upper surface of the depressed puzzle piece repeated." *Id.* col.13 ll.38-45. The Bevan patent further elaborates the advantages of this embodiment:

> [A] child or user of the toy puzzle will associate the audible recorded phonetic sound with the imprinted letter on the upper surface of the matching puzzle piece. In this manner, the user of the puzzle will become proficient in reading since the user will learn the phonetic pronunciation of letters and will piece them together to form words.

*Id.* col.13 ll.56-62. In terms of functionality, the Bevan patent is identical to claim 25. However,

6

as explained by Fisher-Price's technical expert, Ronald Milner, the Bevan patent is missing some of the more recently-developed electronic limitations found in claim 25. (Tr. at 1133:2-6.)

Another piece of prior art (also not considered by the examiner), the Texas Instruments Super Speak & Read ("SSR"), provides many of those missing limitations. The SSR is configured in a very similar manner as the PowerTouch – it opens like a briefcase, exposing a large rectangular recess into which one of many books fit.[2] (DTX 740.) In one mode of operation, the SSR allows a user to press depicted letters, and the SSR responds by saying the associated phoneme. However, unlike claim 25, there is no reader configured to communicate the identity of the depiction to the processor. Instead, the user must communicate to the SSR the identity of the book and page by pressing a series of shapes. Also unlike claim 25, the SSR does not depict *full* words from which individual letters can be selected, but rather it depicts the first letter of a small word separate from the remainder of the word. The user can touch the first letter to hear that letter's phoneme, and then the user can touch the remainder of the word to hear the rest of the word enunciated. (DTX 746, 754A.) In Mr. Milner's opnion, these are the only two limitations of claim 25 missing from the SSR. (Tr. at 1133:25-1134:15.) Mr. Milner further opined that, at the time of the invention, somebody of ordinary skill in the art would have been motivated to combine the teachings of the Bevan patent with the SSR. (Id. at 1133:7-16.) Mr. Milner acknowledged that even the combination of those two prior art references would not have met all of the limitations of claim 25 because neither reference incorporates a reader. Nevertheless, he testified that "[e]ngineers knew about IBM cards with holes and readers from their earliest days," and therefore, that it would have been obvious to add a reader

---

[2]The court mentions the similarity between the PowerTouch and SSR merely as an explanatory aid. Lest there be any doubt, the court's obviousness conclusion does not rest on a comparison between the PowerTouch and any prior art reference.

to the combination. (Id. at 1134:5-7.)

Based on Mr. Milner's testimony, the court concludes that "an artisan of ordinary skill in the art at the time of invention, confronted by the same problems as the inventor and with no knowledge of the claimed invention, would select the various elements from the prior art and combine them in the claimed manner." *Ruiz*, 357 F.3d at 1275. The problem to be solved by the hypothetical inventor would have been to update the functionally-equivalent Bevan patent. (See 1132:25-1133:21.) As Mr. Milner explained, the electronic components disclosed in claim 25, including the reader, were well known at the relevant time, and it would have been obvious to use those components to update the Bevan patent. (Tr. at 1123:15-1124:12, 1133:7-1134:15.) It is axiomatic that the ubiquity of the common electronic components disclosed in claim 25 would provide an inherent motivation to combine. As to the secondary considerations tending to show non-obviousness, Leapfrog points to only three: commercial success, praise, and long-felt need. While it is true that Leapfrog adduced substantial evidence of these three factors, the court is not convinced that they overcome the very strong case of obviousness presented by Fisher-Price through the testimony of Mr. Milner. Thus, "although the record shows a highly successful product, the record also establishes such a strong case of obviousness based on . . . the teachings of the prior art, including . . . reference[s] not considered during examination, that the objective evidence of nonobviousness does not persuade [the court] to reach a contrary conclusion." *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 769 (Fed. Cir. 1988). Consequently, the court finds by clear and convincing evidence that claim 25 of the '861 patent is invalid as obvious.

**IV.     CONCLUSION**

For the aforementioned reasons, the court finds that the PowerTouch does not infringe claim 25 of the '861 patent, and that claim 25 of the '861 patent is invalid as obvious. In light of those findings, there is no need to make any additional findings regarding induced infringement, willful infringement, or damages. Furthermore, Fisher-Price's three outstanding motions for judgment as a matter of law are now moot.


Dated: March 30, 2006                                          /s/ Gregory M. Sleet
                                                                UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEAPFROG ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-927-GMS |
| | ) | |
| | ) | |
| FISHER-PRICE, INC. and | ) | |
| MATTEL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

IT IS HEREBY ORDERED THAT:

1. Judgment be ENTERED in favor of the defendants; and

2. The defendants' three motions for judgment as a matter of law (D.I. 272, 274, 276) be DENIED as moot.

Dated: March 30, 2006              /s/ Gregory M. Sleet
                                   UNITED STATES DISTRICT JUDGE